# EXHIBIT   B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN | : CIVIL ACTION NO: |
| | : |
| SUPREME OIL COMPANY, INC. | : |
| Petitioner, | : |
| | : |
| and | : |
| UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND AND COMMERCIAL PENSION FUND, | : |
| | : |
| Respondent | : |

BRIEF IN SUPPORT OF PETITIONER'S APPLICATION TO VACATE
THE ARBITRATION AWARD

STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Petitioner
105 Eisenhower Parkway
Roseland, New Jersey 07068
973-403-9200

Kenneth E. Bellani, Esq.
on the Brief

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES..................................................................ii, iii

PROCEDURAL STATEMENT........................................................................1

STATEMENT OF FACTS..............................................................................1

LEGAL ARGUMENT

I.     UNDER 9 U.S.C.A. SECT. 10(a)(4), AN ARBITRATION AWARD MAY BE VACATED WHERE, AS IN THE CASE AT BAR, THE ARBITRATOR EXCEEDED ITS POWER, OR SO IMPERFECTLY EXECUTED IT, THAT A MUTUAL, FINAL, AND DEFINITE AWARD UPON THE SUBJECT MATTER WAS NOT MADE............................................................6

     A.    THE ARBITRATOR FAILED TO REQUIRE THE FUND TO DEMONSTRATE THAT A CONDITION PRECEDENT TO THE FUND'S CONTRACTUAL ENTITLEMENT TO A $25.00 PER MONTH "CALL-UP" HAD BEEN SATISFIED....................................6

     B.    ASSUMING ARGUENDO THAT THE FUND WAS ENTITLED TO A "CALL-UP", THE ARBITRATOR OTHERWISE IGNORED THE CLEAR AND UNEQUIVOCAL LANGUAGE OF THE RELEVANT MOA PROVISION IN DETERMINING WHAT RATE SUPREME WAS REQUIRED TO PAY TO THE FUND UNDER THE MOA...............................................................8

II.    UNDER 9 U.S.C.A. SECT. 10(a)(3), AN ARBITRATION AWARD MAY BE VACATED WHERE THE ARBITRATOR WAS GUILTY OF MISCONDUCT IN REFUSING TO HEAR EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY BY WHICH THE RIGHTS OF SUPREME HAVE BEEN PREDJUDICED............................................11

CONCLUSION.............................................................................................13

i

TABLE OF AUTHORITIES

<u>CASES</u>                                                                          <u>PAGE</u>

<u>Concourse Beauty School, Inc. v. Polakov</u>
      685 F. Supp. 1311, 1318 (S.D.N.Y. 1988)....................................................12

<u>Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC.</u>
      319 F.3d 1060, (C.A. 8 (Minn.) 2003).........................................................10

<u>Hoteles Condado Beach v. Union De Tronquistas Local 901</u>
      763 F.2d 34, 39 (1st Cir. 1974)....................................................................12

<u>Houston Lighting & Power Co. v. Int'l Brother of Elec. Workers,</u>
<u>Local Union No. 66</u>
      71 F.3d 179, 184 (5th Cir. 1995)..................................................................10

<u>Merritt Hill Vineyards v. Windy Hgts. Vineyard</u>
      61 N.Y. 2d 106, 112-113, 472 N.Y.S. 2d 592, 450 N.E. 2d 1077...............7

<u>M.K. Metals v. Container Recovery Corp.</u>
      645 F.2d 583..................................................................................................7

<u>Rock-Tenn Company v. Paper, Allied-Industrial, Chemical and Energy</u>
<u>Workers International Union, AFL-CIO, CLC and Local Union No. 4-0895</u>
      108 Fed.Appx. 905, 907, C.A. 5 (Tex.), 2004..............................................10

<u>Shain Corporation v. Bartek, Inc.</u>
      120 F.3d 16,20 (C.A. 2 (N.Y.), 1997)..........................................................12

<u>Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors,</u>
<u>Local Union 657 v. Stanley Structures, Inc.</u>
      735 F.2d 903, (C.A. 5 (Tex.) 1984)..............................................................10

<u>Trans. Cas. Co. v. Trenwick Reinsurance Co.</u>
      659 F. Supp. 1346, 1354 (S.D.N.Y. 1987) aff'd mem., 841 F.2d 1117
      (2nd Cir. 1988)..............................................................................................12

<u>STATUTES</u>

9 U.S.C.A. §10.................................................................................................1

9 U.S.C.A. §10(a)(3).................................................................................11, 12

9 U.S.C.A. §10(a)(4) ........................................................................................5

<u>TEXTS</u>

Calamari and Perillo, Contracts §11-2, at 438 [3d ed.]............................................ 7

Calamari and Perillo, Contracts §11-5, at 440 [3d ed]............................................7

Calamari and Perillo, Contracts §11-8, at 444 [3d ed]............................................7

5 Williston, Contracts §669, at 154 [3d ed]..............................................................8

Restatement [Second] of Contracts §224..................................................................7

## PROCEDURAL STATEMENT

This is a Notice to Vacate an Arbitration Award entered by William F. Clarke (the "Arbitrator") on June 13, 2007. A copy of the award which is the subject of this petition is annexed hereto as Exhibit "A." This notice seeks to invoke this Court's authority under 9 U.S.C.A. Sect. 10 to vacate an arbitration award where the arbitrator exceeded its power, or so imperfectly executed it, that a mutual, final, and definite award upon the subject matter was not made [sub-section (4)] and where the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy by which the rights of Supreme have been prejudiced [sub-section (3)].

## STATEMENT OF FACTS

Petitioner, Supreme Oil Company, Inc. ("Supreme" or "Employer"), is a New Jersey Corporation with its principal place of business in Englewood, New Jersey. Respondents, UFCW Local 174 Commercial Health Care Fund and Commercial Pension Fund (collectively the "Fund"), are unincorporated associations organized under E.R.I.S.A. with a principal place of business in New York, New York.

For many years, Supreme had a series of Collective Bargaining Agreements with Local 174 of the United Food & Commercial Workers, AFL-CIO

Those Collective Bargaining Agreements provided, *inter alia*, for contributions into Respondent, UFCW Local174 Commercial Health Care Fund and Commercial

-1-

Pension Fund on behalf of certain of Supreme's employees employed at its Englewood, New Jersey location.

In calendar year 2000, Petitioner negotiated a renewal Collective Bargaining Agreement with Local 174 representatives.  As part of the collective bargaining negotiations, the parties executed a Memorandum Agreement, attached hereto as Exhibit "B", which was duly ratified by the appropriate employees of Supreme. [See paragraph 2 of the Certification of Larry M. Cole, the "Cole Certification"].  A "redlined" Collective Bargaining Agreement containing the modifications which had been negotiated and ratified was thereafter prepared by the Employer's attorney and forwarded to Local 174 for review prior to the execution of the finished Collective Bargaining Agreement.  [See paragraph 3 of the Cole Certification].

Shortly thereafter and before the expiration of such Agreement, the UFCW International Union caused its Local 174 to be placed into Trusteeship allegedly as a result of fiscal improprieties in the operation of that Local.  During the Trusteeship, the International Union assigned some of the Local 173 membership and collective bargaining relationships to various other Local Unions of the UFCW.  Supreme and its union employee complement were assigned to Local 1245 of the UFCW.  This Union was located in Little Falls, New Jersey.  A finished Collective Bargaining Agreement was never executed by Local 1245. [See paragraph 4 of the Cole Certification].

At the expiration of the term of the Collective Bargaining Agreement, representatives of Local 1245 and Supreme commenced negotiations for a renewal Collective Bargaining Agreement.  Agreement was reached for a new three year term commencing in 2003 and terminating in 2006.  In those negotiations, Supreme was

represented by its labor attorney, Larry M. Cole, Esq. During various negotiation
sessions, the Union was represented by different individuals.

Local 1245 and Supreme were unable to reach an agreement for a renewal
contract. Finally, the Employer submitted a Final Offer to the Union. [See paragraph 5 of
the Cole Certification]. Thereafter, a negotiating session was held between Mr. Cole on
behalf of Supreme, and Vincent Devito, the President of Local 1245, where a hand-written
modification was made to the Final Offer and the parties executed the Final Offer as and
for a Memorandum Agreement. A copy of that Final Offer is attached as Exhibit "C".
[See paragraph 6 of the Cole Certification].

Mr. Cole again prepared a "redlined" agreement embodying the changes made in
the terms and conditions of employment and submitted the same to Local 1245 for
review. Local 1245 continued to refuse to execute the Collective Bargaining Agreement.
As a consequence, the parties have operated under the Final Offer for all relevant periods.
[See paragraph 7 of the Cole Certification].

Under the provisions of the Final Offer, the Employer commenced contributions
to the Respondent Funds at the newly negotiated rates. Disputes arose between the
Employer and the Funds in a multitude of areas. After the first year, the Funds persisted
in billing the Employer the rates not spelled out in the Final Offer and billed the
Employer for coverages on behalf of certain individuals at a rate not negotiated. The
Employer refused to pay this billing and the matter proceeded to arbitration. [See
paragraph 8 of the Cole Certification].

Four issues were presented to the Arbitrator for determination:

> Issue 1: "Is the Fund billing, timely and with proper documentation for employee change of coverage from single coverage to family coverage(Fund 6 a-f)?" If not, what shall the remedy be?

> Issue 2: "Is the Employer obligated to pay $25.00 call in addition to the $50.00 contribution increase in the second and third years of the contract, as set forth in the Memorandum of Agreement (MOA) (J-3 as marked in evidence)?" If so, what shall the remedy be?

> Issue 3: "Is the Employer obligated to pay the alleged outstanding contribution to the UFCW Local 174 Commercial Pension Fund?" If so, what shall the remedy be?

> Issue 4: "Is the Employer liable for Liquidated Damages, Interest and Attorneys' Fees for its alleged failure to pay timely contributions to the Funds?" If so, what shall the remedy be?

The arbitration hearing took place at the offices of the Fund on October 26, 2006, March 21, 2007, April 26, 2007and May 16, 2007.

On the four issues presented to him for determination, the Arbitrator ruled as follows:

1. The Fund's billing to Supreme was timely and with proper documentation relative to the implementation of changes from single to family coverage.

2. Based upon the MOA, Supreme is obligated to pay a $25.00 call in addition to the $50.00 contribution increase in the second and third years of the contract.

3. Supreme is obligated to pay the outstanding contributions to the Fund as asserted by the Fund.

4. Supreme is liable for liquidated damages, interest and attorney's fees due to its failure to make timely payments to the Fund.

This petition is based primarily on the Arbitrator's decision on the second issue. However, to the extent that the Arbitrator's ruling on the second issue is wrong and that

this error became part of the equation used in calculating the awards rendered in

connection with the first, third and fourth issues, Supreme is seeking vacation of the

entire award rendered by the Arbitrator.

<u>LEGAL ARGUMENT</u>

1.    UNDER 9 U.S.C.A. SECT. 10(a)(4), AN ARBITRATION AWARD
      MAY BE VACATED WHERE, AS IN THE CASE AT BAR, THE
      ARBITRATOR EXCEEDED ITS POWER, OR SO IMPERFECTLY
      EXECUTED IT, THAT A MUTUAL, FINAL, AND DEFINITE AWARD
      UPON THE SUBJECT MATTER WAS NOT MADE.

According to the MOA, Supreme agreed to make certain quarterly contributions

to the Fund relative to the health care benefits of its union employees. The clear,

unambiguous and express terms upon which Supreme agreed with Local 1245 to

contribute to the 714 Funds are:

"(a) UFCW Local 174 Commercial Health Care

<u>Family Plan</u>
Effective October 1, 2003          $458.00 per month
Effective October 1, 2004          $508.00 per month*
Effective October 1, 2005          $558.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with
a call-up to all contributing Employers.

<u>Single Coverage</u>
Effective October 1, 2003          $271.00 per month
Effective October 1, 2004          $295.00 per month*
Effective October 1, 2005          $334.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with a
call-up to all contributing Employers."

[See paragraph 9 of the Cole Certification and Exhibit "C" hereof].

A.    THE ARBITRATOR FAILED TO REQUIRE THE FUND TO
DEMONSTRATE THAT A CONDITION PRECEDENT TO THE
FUND'S CONTRACTUAL ENTITLEMENT TO A $25.00 PER
MONTH "CALL-UP" HAD BEEN SATISFIED.

As can be seen above, in years two and three of the contract, the contribution rate

for each year may be increased by up to $25.00 in accordance with "a call-up to all

contributing Employers." However, the Fund produced no evidence at the hearing to

establish that there was, in fact, a call-up to all contributing Employers of employees that

were members of Local 1245. The only "evidence" of a call-up that was proffered by the

Fund was a copy of the "Minutes of UFCW Local 174 Commercial Health Care Fund", a

copy of which is annexed hereto as Exhibit "D." This document indicates that there was

a call-up for certain contributing Employers "subject to such a call", not to all

contributing Employers, as required under Supreme's Agreement with Local 1245. No

evidence whatsoever was introduced at the hearing by the Fund it had issued "a call-up to

all contributing Employers." [1] [See paragraph 11 of the Cole Certification].

Clearly, according to the Memorandum Agreement, in order for Supreme to

become obligated to pay a call-up, that call-up would have had to have been made upon

all contributing Employers. This condition precedent to the obligation of Supreme to pay

an additional $25.00 per month per employee was simply never satisfied.

---

[1] It should also be noted that the Fund failed and refused to provide Supreme with
such evidence despite Supreme's written request for same. Attached hereto as Exhibit
"E" is a copy of correspondence from Supreme's counsel to the Fund in which this
request was made. This correspondence was admitted into evidence at Supreme's
request at the hearing. [See paragraph 10 of the Cole Certification].

-6-

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises (Calamari and Perillo, Contracts §11-2, at 438 [3d ed.]; *see* Restatement [Second] of Contracts §224; *see also Merritt Hill Vineyards v. Windy Hgts. Vineyard,* 61 N.Y.2d 106, 112-113, 472 N.Y.S.2d 592, 450 N.E.2d 1077). Most conditions precedent describe acts or events which must occur before a party is obligated to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself (*see, M.K. Metals v. Container Recovery Corp.,* 645 F.2d 583). In the latter situation, no contract arises unless and until the condition occurs (Calamari and Perillo, Contracts §11-5, at 440 [3d ed]).

Conditions can be express or implied. Express conditions are those agreed to and imposed by the parties themselves. Implied or constructive conditions are those "imposed by law to do justice" (Calamari and Perillo, Contracts §11-8, at 444 [3d ed]). Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient. The importance of the distinction has been explained by Professor Williston:

Since an express condition...depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself. Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties unless to do so will violate public policy. Where, however, the law itself has imposed the condition, in absence of or

-7-

irrespective of the manifested intention of the parties, it can deal with its creation as it pleases, shaping the boundaries of the constructive condition in such a way as to do justice and avoid hardship. (5 Williston, Contracts §669, at 154 [3d ed.]"

By ignoring this condition precedent, the Arbitrator disregarded the clear and unequivocal language and meaning of this provision of the MOA.

B.    ASSUMING ARGUENDO THAT THE FUND WAS ENTITLED TO A "CALL-UP", THE ARBITRATOR OTHERWISE IGNORED THE CLEAR AND UNEQUIVOCAL LANGUAGE OF THE RELEVANT MOA PROVISION IN DETERMINING WHAT RATE SUPREME WAS REQUIRED TO PAY TO THE FUND UNDER THE MOA.

Assuming arguendo that the Fund was entitled to a "call-up", the Arbitrator otherwise ignored the clear and unequivocal language of the relevant MOA provision in determining what rate Supreme was required to pay to the Fund under the MOA. For example, the single rate effective October 1, 2004 was $295.00 per month. In the event of a call-up, **that rate** would be increased to $320.00 per month for the balance of the period from October 1, 2004 to October 30, 2005.

On October 30, 2005 the new rate of $334.00 per month would go into effect. In the event there were to be a second call-up, **that rate** would thereafter be increased to $359.00 per month for the balance of that year. (There was no call-up contemplated in the MOA during the period October 1, 2003 to October 30, 2004.)

After reviewing notice of increased rates, a letter was written to the Fund questioning whether the increase was in accordance with a call-up to all contributing Employers. See attached Exhibit "E". This inquiry went unanswered. [See paragraph 10 of the Cole Certification]. Supreme argued that such answer was a condition precedent to any obligation to pay any increase.

-8-

The Fund argued that the Employer was responsible to pay $50.00 more per month than it had bargained for in the period commencing July 1, 2005, rather than the bargained for amount plus a $25.00 call-up. It appeared that the Fund's argument was that the $25.00 call-up in year two "rolled" into the negotiated rate in year three and that an additional $25.00 plus the $25.00 call-up in year three resulted in a $50.00 increase in the negotiated rate.

Cross-examination of the Fund's witness elicited the admission that the Fund referred to this as a "roll-up" (as opposed to a "call-up") and that certain of its other negotiated Collective Bargaining Agreements provided for a roll-up in addition to a call-up but that the Supreme Agreement did not require a roll-up. [See paragraph 12 of the Cole Certification].

Despite this admission, in applying this provision to the dispute before him, the Arbitrator adopted the position of the Fund that "the Board of Trustees [of the Fund] approved and implemented a $25.00 call in the second year of the MOA... moving the contractual rate in Year 2 to $533, i.e. $508.00 + $25.00 = $533.00. In Year 3 of the MOA... , the Board of Trustees approved and implemented a second "call" raising the rate from $583.00 to $608... i.e. a $25 call, plus the $50 contractual contribution increase... ." In doing so, the Arbitrator completely disregarded the clear and unequivocal meaning of this provision of the MOA and substituted in its place his own contorted interpretation. In Year 3, the MOA clearly called for a contribution of $558.00 plus a call of an additional $25.00, for a total of $583.00 per month. [2]

---

[2]It should be noted that this same "reasoning" was applied to the determination of the rate applicable to single coverage participants as well.

"[W]hen an arbitrator ignores the express language of a CBA, he has exceeded his authority and the arbitration award must be vacated." Rock-Tenn Company v. Paper, Allied-Industrial, Chemical and Energy Workers International Union, AFL-CIO, CLC and Local Union No. 4-0895, 108 Fed.Appx. 905, 907, C.A. 5 (Tex.), 2004. "[W]hen the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice'... his decision may be unenforceable." Ibid. See *Houston Lighting & Power Co. v. Int'l Broth. Of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 184 (5th Cir. 1995) ("If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning."); *Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, (C.A. 8 (Minn.), 2003) ("Arbitrator is not free to ignore or abandon plain language of parties' agreement."); *Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, (C.A. 5 (Tex.) 1984) ("Arbitration agreements do not grant arbitrators carte blanche, so federal courts have power to vacate awards that are arbitrary and capricious.").

Clearly in the case at bar, the Arbitrator ignored the express language of the MOA and, in so doing, exceeded his authority such that the award rendered by him must be vacated.

II.    UNDER 9 U.S.C.A. Sect. 10(a)(3), AN ARBITRATION AWARD
MAY BE VACATED WHERE THE ARBITRATOR WAS
GUILTY OF MISCONDUCT IN REFUSING TO HEAR
EVIDENCE PERTINENT AND MATERIAL TO THE
CONTROVERSY BY WHICH THE RIGHTS OF SUPREME
HAVE BEEN PREJUDICED

At the final day of the hearing, Supreme offered the testimony of its attorney,

Larry Cole, Esq., on the issue of the meaning of this very language.[3] Mr. Cole negotiated

the MOA for Supreme, was prepared to testify as to negotiations on the call-up/roll-up

issue, and actually executed same on behalf of Supreme. This testimony was rejected by

the Arbitrator and Mr. Cole was not permitted to testify. After the Arbitrator refused to

allow Mr. Cole to testify, Supreme made an offer of proof with respect to the testimony

that Mr. Cole would have presented to the Arbitrator had he been permitted to testify. In

his analysis relative to his decision on this issue, the Arbitrator stated on page 16 of his

opinion, that "The employer called no witnesses to refute testimony or exhibits." Earlier,

on page 15, in reviewing certain evidence presented to him by the Fund, the Arbitrator

commented that there was "no evidence to the contrary." In arguing in favor of permitting

Mr. Cole to testify, Supreme went into significant detail as to what Mr. Cole's testimony

would address and establish. The evidence that Mr. Cole's testimony would have

provided was intended to address this very issue. The fact that that testimony would have

been relevant and pertinent to the issue that the Arbitrator was asked to determine is

reinforced by the fact that the Arbitrator made a point of stating that the Fund's evidence

---

[3]Present with Mr. Cole at the hearing was Kenneth E. Bellani, Esq. from Mr.
Cole's law firm who was prepared to handle the presentation of Mr. Cole's direct
testimony and cross-examination.

-11-

on this issue was uncontroverted. That was simply not the case. The arbitration proceeding was fundamentally unfair in that Supreme was not permitted to offer relevant, pertinent testimony and the arbitrator, by virtue of his own decision heard only one side of the dispute, despite Supreme's intention and ability to present the other side of the dispute. [See paragraph 13 of the Cole Certification].

"[A]lthough not required to hear all the evidence proffered by a party, an arbitrator 'must give each of the parties to the dispute an adequate opportunity to present its evidence and argument. *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1ˢᵗ Cir. 1974)." Shain Corporation v. Bartek, Inc., 120 F.3d 16, 20 (C.A. 2 (N.Y.), 1997). See also, Concourse Beauty School, Inc. v. Polakov, 685 F. Supp. 1311, 1318 (S.D.N.Y. 1988) ("The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award." citing *Trans. Cas. Co. v. Trenwick Reinsurance Co.*, 659 F. Supp. 1346, 1354 (S.D.N.Y. 1987) *aff'd mem.*, 841 F.2d 1117 (2ⁿᵈ Cir. 1988).

The refusal by the Arbitrator to hear the testimony of Larry Cole, Esq. on behalf of Supreme made the arbitration fundamentally unfair to Supreme such that the Arbitrator was guilty of misconduct as proscribed by 9 U.S.C.D. Sect. 10(a)(3), thereby permitting this Court to vacate the Arbitrator's award.

CONCLUSION

For the reasons cited above, the award of Arbitrator William F. Clarke

entered on June 13, 2007 should be vacated.

JONATHAN J. LERNER
JL 2916
STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Petitioner
105 Eisenhower Parkway
Roseland, New Jersey 07067
973-403-9200

Dated: July 13, 2007

-13-