**EXHIBIT A**

In the Matter of the Arbitration

Between

**SUPREME OIL COMPANY, INC.**

And

**UFCW LOCAL 174**
**COMMERCIAL HEALTH CARE FUND**
**AND**
**COMMERCIAL PENSION FUND**

**OPINION and AWARD**

**Re: Delinquent Payment to UFCW**
**Local 174 Affiliated Trust Funds**

**APPEARANCES:**

**FOR THE EMPLOYER:**

Starr, Gern, Davidson & Rubin
By Larry Cole, Esq.
James Smith, Vice President Finance
Kenneth  Bellani, Esq.

**FOR THE FUND:**

Calcagno & Associates, Attorneys at Law, LLC
By Andrew J. Calcagno, Esq.
Thomas Cunningham, Business Agent (via Telephone)
Maria Vegas, Fund  Collection Manager

The undersigned derives jurisdiction as Arbitrator of this matter by appointment by the Trustees of the various UFCW    Local 174 Affiliated Trust Funds (hereinafter:  the "Funds") pursuant to the requirements in their Associated Trust    Documents. This designation directs the Arbitrator to render a written and binding Award on the Issues presented.  In accordance with notice duly given to the parties, a hearing was held in the offices of UFCW Local 174 Affiliated Trust Funds located at 540 West 48th Street, New York, NY on October 26, 2006, March 21, 2007, April 26, 2007 and May 16, 2007.  The parties were afforded full opportunity to present evidence, examine and cross examine witnesses and otherwise present their respective arguments and proofs in support of their position relative to the Issues presented, which were submitted for a final binding decision.

**Before:  William F. Clarke**
**Arbitrator**

**Note:**  Reference to Exhibits in the record are (J 1-4) for Joint Exhibits; (E 1-3) for Employer Exhibits; and (F 2-13) for Fund Exhibits.  Copies of all Exhibits submitted by the parties were distributed to those present during the hearing for their files or subsequently forwarded to those concerned with related correspondence.  These Exhibits are referred to in this Opinion and Award as indicated.

1

## ISSUES

**Issue 1:** "Is the Fund billing, timely and with proper documentation for employee change of coverage from single coverage to family coverage (Fund 6 a-f)?" If not, what shall the remedy be?

**Issue 2:** "Is the Employer obligated to pay the $25.00 call in addition to the $50.00 contribution increase in the second and third years of the contract, as set forth in the Memorandum of Agreement (MOA) (J-3 as marked in evidence)?" If so, what shall the remedy be?

**Issue 3:** "Is the employer obligated to pay the alleged outstanding contribution to the UFCW Local 174 Commercial Pension Fund?" If so, what shall the remedy be?

**Issue 4:** "Is the Employer liable for Liquidated Damages, Interest and Attorneys' Fees for its alleged failure to pay timely contributions to the Funds?" If so, what shall the remedy be?

## BACKGROUND

Supreme Oil, Inc. (Admiration Foods) (hereinafter the "Company or Employer") is a supplier of cooking oil, and oil based products, located in the New Jersey Metropolitan area. Prior to March 2001, their employees were members of UFCW Local 174 and received benefits through the Union's Affiliated Trust Funds. On or about March 1, 2001, the UFCW Local 174 was placed in Trusteeship by the National and the new representative for the Company employees was designated as UFCW Local 1245 for related contractual matters. At that same time, the UFCW Local 174 Affiliated Trust Funds were designated to provide the related benefit packages to certain of those employees. Consequently, the UFCW Local 174 Affiliated Trust Funds began furnishing several employee benefit entitlements to the Company employees.

The matter herein arose in the calendar years 2004-2005 when the Fund instituted a "call" for the UFCW Local 174 Commercial Health Care Fund (hereinafter: the "HCF"), pursuant to the subject MOA marked in evidence as (J-3). At that time, after a review of certain monthly Fund billings which included the "call", the Employer challenged the authority of the Fund to bill for a multiple year "call" for the (HCF). The Company further sought to arbitrate this matter under certain language contained in MOA (J-3).

2

The Funds Office, on behalf of the (HCF) notified the Company via Certified Mail numerous times that they were in violation of the MOA (J-3) for failing to remit required contributions. Subsequently, a Notice of Arbitration was served on the Company alleging that the Company either failed to make or was delinquent in making required payments to the HCF pursuant to the "call" requirement. In that regard, an Arbitration Hearing was initially held on October 26, 2006, and then rescheduled for March 21, 2007. Because the parties could not amicably resolve the matter, the matter was set down for an Arbitration date of April 26, 2007. As scheduled, we proceeded with the Hearing on April 26, 2007 which was not completed due to Mr. Cole's time constraints. During the April 26, 2007 Hearing, certain Exhibits were marked into evidence and two witnesses testified, namely, Thomas Cunningham, Business Agent for Local 1245, and Maria Vegas, the Funds' Collection Manager. The matter was reconvened on May 16, 2007, wherein additional Witness' Testimony was presented and additional documents were introduced into Evidence.

## POSITION OF FUND

**The Fund Issue 1: "Is the Fund billing timely, and with proper documentation?"**

Mr. Cole and Mr. Calcagno stipulated that new hires after January 13, 2000 will be covered by Single Plan "A" Commercial Welfare until they reach three (3) years of service, at which time, if they have proof of immediate family (son, daughter, spouse) will receive family coverage.

The Fund states through direct testimony of Thomas Cunningham (Business Agent), that any eligible full time employee wishing to change his/her status, would contact the Union office, and supply documentation, i.e. marriage certificate or birth certificate as proof of this change. Documents were furnished to the Fund office and subsequent billing would reflect this change.

Maria Vegas, under direct testimony, stated that billing would be changed to reflect individual status. She further stated that the Company was notified of the change in status through the monthly billing. Ms. Vegas testified she was unaware of any requests by the Company to receive documented proof until requested at the April 26, 2007 hearing. On Cross Examination of Jim Smith, he admitted that he personally never requested documentation from the Fund office. After review the change in status was reflected with monthly billing.

As marked in evidence as (F-6 [a-f]) and (F-7) Ms. Vegas testified the Fund had documents of proof for the change to family status on the six (6) people in question. The Fund did not present documented proof on Domingo Camilo, who left the Company employment on July 31, 2006.

(F-7) Jose Burgos indicates a hire date of January 2000 and a family billing date as of February 2003. (F-6a) is a copy of a birth certificate for a minor child born on December 23, 1992.

(F-7) Rubin Jaquez indicates a hire date of September 1988 and a family billing date of January 2001. (F-6b) is a certificate of marriage dated September 5, 1996.

(F-7) Peralta Garcia indicates a hire date of February 2000 and a family billing date of February 2003. (F-6c) as presented is a certificate of marriage dated January 15, 2005.

(F-7) Rodriquez Tejeda indicates a hire date of July 2001 and a family billing date of August 2004. (F-6d) entered in evidence is a marriage certificate dated January 4, 1994.

(F-7) Danny Delva indicates a hire date of September 1988, and a family billing date of July 2004. (F-6e) is a birth certificate for a daughter dated July 2001.

(F-7) Hector Cruz indicates a hire date of January 1999 and a family billing date of February 2003. (F-6f) as presented is a certificate of marriage dated April 19, 2001. (F-7) lists seven (7) people who went from single to family coverage (F-6 [a-f]), for which the Company owes $68,937.00.

Maria Vegas testified that the Fund bills for family coverage only after receiving proof of a change to family status and receiving the applicable MOA or CBA. Thomas Cunningham testified that any employee seeking a change from single to family coverage, contacts the Union with the necessary documents. Mr. Cunningham's office in turn, forwards the documents to the Fund office to assure proper benefits are given to the employee. Mr. Cunningham further testified that his office does not forward proof of change to the employer, and has never been asked by the employer to provide such documents. It is the position of the Fund office that when proper documents are received, billing records are updated.

**The Fund Issue 2,** "Is the employer obligated to pay the $25 call in addition to the $50 contribution rate increase in the second and third years of the contract, as set forth in the Memorandum of Agreement (MOA) marked as Exhibit (J-3) in evidence?"

Based on the evidence presented by the Fund office, it is clear that the Trustees approved and implemented a $25 call in the second year of the contract increasing the contractual rate in Year Two to $533. After hearing testimony from Thomas Cunningham, and after reviewing the relevant documents, it is clear that the Board of Trustees of the Local 174 (HCF) unanimously approved a $25 call in Year Three of the contract, and this call is in addition to the $50 contractual contribution rate increase (Reference F-4, and F-5).

A (HCF) Board of Trustees meeting was convened on June 25, 2004. In the Minutes of that meeting (F-4), there was a motion to adopt a $25 call as of July 1, 2004. It was unanimously approved by the entire Board of Trustees. It is important to note that Mr. John Troccoli, Secretary/Treasurer of Local 1245 is a Board Member representing the Union, and voted to approve the $25 call. Mr. Troccoli was also one of the Union Representatives who negotiated the MOA. A letter from the Fund office was sent to all contributing employers dated June 29, 2004. (F-2)

The Board of Trustees of the (HCF) met on November 17, 2004, and in that meeting it was unanimously resolved by the Trustees that effective January 1, 2005, the call is to be made for an additional $25 per month for each of the contributing employers subject to the call in addition to the contractual $50 increase.. Once again, Mr. Troccoli was in attendance, and voted to approve the $25 call. (F-5)

A letter was sent to all contributing employers on January 1, 2005 informing each employer of the additional $25 call effective June 1, 2005 (F-3)

The Fund contends that the MOA, Final Offer, and entered into evidence as (J-3) signed by Larry Cole, Esq. for the Company and Vincent DeVito, President of UFCW Local 1245, clearly calls for a $25 call in the second year of the contract, and an additional $25 call in the third year of the Contract, in addition to the contractual $50 contribution increase. This is also confirmed in the Minutes of the Board of Trustees as marked (F-4) and (F-5) in evidence.

Mr. Cunningham testified that the $25 call in years two and three were in addition to the $50 contribution rate in each year of the contract. Contractual contribution increases are clearly identified in MOA (J-3) as follows:

|                              | <u>Single Plan</u>   | <u>Family Plan</u>    |
|------------------------------|----------------------|----------------------|
| Effective October 1, 2003    | $271.00 per month    | $458.00 per month    |
| Effective October 1, 2004    | $295.00 per month    | $508.00 per month    |
| Effective October 1, 2005    | $334.00 per month    | $558.00 per month    |

In addition, the MOA marked in evidence as (J-3) clearly states that there may be two calls of $25 each. (Fund 4) and (Fund 5) marked in evidence, show that the Board of Trustees of (HCF) therefore unanimously approved both of the calls in addition to the $50 contractual contribution increases.

The Fund position is that the family rate went from $458.00 with a $25 call on July 1, 2004 and a contractual increase of $50 on October 1, 2004, bringing the family rate to $533.00 (Fund 4). The Employer, through his attorney, admits that if the call was implemented, the rate would be $533 in the second year of the contract. In addition the Fund presented evidence that there was a second call for $25 (F-5) on January 1, 2005, and a contractual increase of $50 on October 1, 2005, bringing the family rate to $608.00 per month.

Mr. Calcagno specifically referenced Mr. Troccoli as one of the Board Members who unanimously approved the call in addition to the $50 contractual contribution increase and because he was one of the individuals who negotiated the subject MOA (J-3)) with the employer, Supreme Oil. However, he was not called by the employer to repute the Fund's and Union's interpretation of the MOA. The employer was put on adequate notice during the previous Arbitration hearing on April 26, 2007 that Mr. Thomas Cunningham was being called as a witness on behalf of the Funds. The employer chose not to call or subpoena for testimony any other participants of the labor negotiations between Local 1245 and Supreme Oil. As testified to by Mr. Cunningham, and present during the negotiations were Vincent DeVito,

President of Local 1245, John Troccoli, Secretary/Treasurer of Local 1245, and Michael Lefler, one of the principals of Supreme Oil. None of the aforementioned witnesses were called by the employer to refute the testimony of Mr. Cunningham, who testified that the $25 call in years two and three were in addition to the $50 contribution rate increases in each year of the contract. A negative inference should be drawn against the employer for its failure to call witnesses with relevant knowledge to the issues at hand.

**The Fund Issue 3,** "Is the employer obligated to pay the alleged outstanding contribution to the Local 174 Commercial Pension Fund?"

(F- 8)  This document indicates that the employer failed to make timely payments for sixteen individuals between the dates of February 2003 and March 2007. The Fund contends money is owed, and the employer never paid. Ms. Vegas testified that the Fund billed for back payment of pension contributions, and the employer continuously refused to pay. (F-8) marked into evidence references intermittent dollars owed from February 2003 through March 2007. The Fund's position is that the employer owed the Fund $10,340.00 for pension contributions, but failed to pay for same.

The Fund documents (F-7) through (F-12) marked into evidence establish that the employer owes delinquent contributions to the Fund in the total sum of $294,665.00. (F-13)

| | | |
|---|---|---|
| (F-7) | Employees changed from single to family coverage | $ 68,937.00 |
| (F-8) | Pension contributions owed | 10,340.00 |
| (F-9) | Welfare back billing owed | 6,245.00 |
| (F-10) | Welfare back billing owed | 32,364.00 |
| (F-11) | Welfare back billing owed | 119,165.00 |
| (F-12) | Member balances | 57,614.00 |
| (F-13) | Total of (F-7,8,9,10,11,12) | $294,665.00 |

**The Fund Issue 4,** "Is the employer liable for Liquidated Damages, Interest, and Attorney's fees for its alleged failure to pay timely contributions to the Funds?"

The Fund position is that the "Employee Retirement Income Security Act (ERISA) Section 502 (g) (2) dictates the remedies, damages and penalties for Delinquent contributions. Sec. 1145 – Delinquent contribution of (ERISA) states:

> "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

## POSITION OF COMPANY

The Company, **regarding Issue 1**, states in (J-1) marked into evidence on April 26, 2007 Position Statement, addressed to this Arbitrator, dated March 20, 2007 and September 20, 2006 as follows:

The Fund billed for employees who have received a three year anniversary with the employer automatically moving them from single to family coverage. The employer states this is incorrect, as any employee reaches the three years of service could only be moved to family coverage by providing proof of immediate family (son, daughter, spouse) in order to receive family coverage.

In (J-1) Mr. Cole states, "As a matter of practice there is an affirmative act required by the employee to prove the existence of a family member for this additional coverage. If the employee does not come forward with this proof, single coverage remains in place. This has long been the practice and has been adopted previously by Local 1245."

9

Under cross examination, Thomas Cunningham testified that he was not aware of any practice in place with Local 1245, prior to the year 2001. Mr. Cunningham reiterated his direct testimony stating that when an employee requested a change from single coverage to family coverage, they would supply proof, i.e. marriage certificate or birth certificate, to the union office, and Mr. Cunningham's assistant would forward said document to the Fund office to commence billing. Mr. Cunningham was questioned as to whether the employer requested proof, he answered, "If the employer asked, the union would verify." He also stated that it was rarely requested.

**With respect to Issue 2**, regarding the 'call' language as marked in evidence as MOA (J-3) – Company position states in Mr. Cole's letter to this Arbitrator (J-1) dated September 20, 2006, #3 (Call-ups) reads as follows:

"The Employer and Local 1245 negotiated an agreement that provided for a contribution rate to the 174 Funds as follows:

(a) UFCW Local 174 Commercial Health Care

Family Plan
| | |
|---|---|
| Effective October 1, 2003 | $458.00 per month |
| Effective October 1, 2004 | $508.00 per month* |
| Effective October 1, 2005 | $558.00 per month* |

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

Single Coverage
| | |
|---|---|
| Effective October 1, 2003 | $271.00 per month |
| Effective October 1, 2004 | $295.00 per month* |
| Effective October 1, 2005 | $334.00 per month* |

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

As can be seen above in years two and three of the contract, the contribution rate for each year may be increased by up to $25.00 in accordance with a call-up to all contributing employers. Thus, for example, the single rate effective October 1, 2004 was $295.00 per month. In the event of a call-up, **that rate** would be increased to $320.00 per month for the balance of the period from October 1, 2004 to October 30, 2005.

On October 30, 2005 the new rate of $334.00 per month would go into effect. In the event there were to be a second call-up, the rate would thereafter be increased to $359.00 per month for the balance of that year."

Mr. Cole further states there was no call-up contemplated during the period of October 1, 2003 to October 30, 2004. In (J-1), the employer references a letter sent to a Mr. Marvin Ghelberg at the Fund office dated October 31, 2005, questioning the health insurance invoice for September and October referencing a call of $25.00 bringing the single rate to $384.00 and the family rate to $608.00. The employer states, assuming there was a call up to all contributing employers, the maximum single rate should be $359.00, and the maximum family rate should be $583.00. The employer further requested that the Fund do the following:

1.      Forward a letter to Mr. Cole indicating whether or not there had been a call-up to all Employers and raised $25.00 per month;

2.      Re-issue your bill for October and subsequent months based upon the Collective Bargaining Agreement contribution rate.

It is the Employer's contention that the Fund office never responded to this letter.

The employer also states that they never received call letters for increases in year 2 and year 3 of the MOA (J-3). Mr. Smith testified that he received letters and did not respond due to the reference of a

contract with Local 342, stating Supreme Oil has no contract with Local 342, but the letterhead was from UFCW Local 174 Affiliated Trust Funds, the same Funds this employer contributes to on behalf of its employees.

Mr. Cole requested that he be allowed to call himself as a witness, and turn questioning over to Mr. Bellani. The Arbitrator denied that request, and Mr. Ballani requested that the letter to Mr. Ghelberg in part (J-1) be entered as an Offer of Proof. This request was granted.

**Issue 3, regarding outstanding contributions,** Mr. Cole's position is that the most money owed to the Fund is a $25.00 call in year 2 and another $25.00 call year 3. Mr. Cole contends the Fund ignored the employer's request for a copy of the call up letter to all employers, and a re-issue of the Fund billing for October 2005, and subsequent months. (J-1).

In Mr. Cole's Opening Statement, he states that his final offer (MOA J-3) calls for one call-up. Under cross examination of Maria Vegas, he questioned Ms. Vegas as follows: QUESTION: "What is a call-up?" ANSWER: "When the Fund reserves drop below a three month reserve, the (HCF) Trustees can vote a call-up." QUESTION: "What is a roll-up?" ANSWER: "Additional money gets added to a prior rate." Ms. Vegas also testified that call letters were sent to all contributing employers. Ms. Vegas also indicated that from time to time during her tenure, there were billing mistakes due to computer problems. She also testified that she personally prepared Fund Exhibits (F-6) through (F-13).

**Issue 4,** It is the employer's contention that there should be no Liquidated Damages and no Interest fee charged. The employer further contends that Fund Counsel is not entitled to charge Attorney fees to the employer. Mr. Cole indicated that this issue was near settlement on April 26, 2007, and that these fees are an over-reach by Fund Counsel, and is not entitled to any fees.

## RELEVANT PROVISIONS OF MOA (J-2) AND MOA (J-3)
## AND THE RESOLUTION OF THE BOARD OF TRUSTEES (F-4) AND (F-5)

Memorandum of Agreement (MOA) (J-2) dated December 12, 2006, and signed by Mr. Larry Cole for

Supreme Oil, and John Troccoli for UFCW Local 1245 is uncontested as to new rates as follows:

    Single Plan effective October 1, 2006 is $437.00

    Family Plan effective October 1, 2006 is $660.00

The new rate has been remitted to the Fund for the month of March 2007.


MOA (J-3) entered into evidence as the Final Offer, signed by Mr. Larry Cole for Supreme Oil, and Mr.

Vincent DeVito for UFCW Local 1245. The Employer and the Union agreed to the terms of the MOA

(J-3) effective October 1, 2003 through September 30, 2005.


Now, therefore, be it resolved as follows:


    The contribution rate for all employers is increased to the maximum amount permitted under the

    applicable MOA (J-3) included but not limited to, through the exercise of all "calls" and each

    increase is effective as of the earliest date under the applicable MOA.


    The Resolution of the Board of Trustees of Local 174 Commercial Health Care Fund (HCF)

    dated June 24, 2004 (F-4), provides, in part, and adopted through a unanimous vote of the

    Trustees to increase the amount of required contributions through a 'call' effective July 1, 2004

    in addition to the $50 contractual contribution increase. The actuary stated as of June 2004, the

    call was needed because of the reserve level. A letter was sent to all participating employers

    notifying them of the $25.00 call dated June 29, 2004 (F-2).

On November 17, 2004 (F-5), the Board of Trustees of the UFCW Local 174 Commercial Health Care Fund (HCF) convened to discuss the financial status of the fund. It was discussed that the MOA (J-3) and other similar CBA's permits a "call" for $25.00 in addition to the $50 contractual contribution increase. Upon a motion duly made and seconded, it was unanimously resolved by the Trustees that effective January 1, 2005 the "call" is to be made for an additional $25.00 per month from all contributing employers. A letter was sent to Supreme Oil dated January 1, 2005 informing them of the Trustees unanimous vote with an effective date of June 1, 2005.

Therefore, be it resolved as follows:

The contribution rate for all contributing employers is increased to the maximum amount permitted under the applicable MOA (J-3), including but not limited to, through the exercise of all contribution increases, and additional "calls" voted on by the Board of Trustees of the (HCF) in (F-4) and (F-5). Each increase is effective as of the earliest date permitted under the applicable MOA (J-3).

## OPINION

In reaching a decision in the matter, this Arbitrator relied on personal notes made during the hearing, the evidence and exhibits presented, and actual testimony offered by witnesses for both parties.

It should be noted that the Collective Bargaining Agreement (CBA) between Supreme Oil Company and United Food and Commercial Workers Union Local 174 AFL-CIO CLC dated October 1, 2000 to September 30, 2003 was not entered into evidence due to the Employer's attorney indicating that the

(CBA) is not signed by either party. However, Mr. Cole did indicate that the employer was using a red-lined copy of the (CBA). It should further be noted that both attorneys stipulated to language covering conversion from the single plan to the family plan. Mr. Cole also refers to Article 13K in the (CBA) J-1 page 2, #2 as it pertains to billing for three year employees. It appears to this Arbitrator that the employer continuously uses a red-lined, unsigned copy of the (CBA) to their specific convenience. The only agreement signed by the parties is the MOA (J-3).

As to the issue of liquidated damages, Mr. Calcagno quotes this issue by introducing (ERISA) section 502 (g) (2). Mr. Cole argues the Fund should not be entitled to liquidated damages, interest fees or attorney fees. ERISA Section 502 (g) Attorney's fees and costs; awards in actions involving delinquent contributions states:

1. In any action under this subchapter (other than an action described in paragraph (2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

2. In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

    A. the unpaid contributions
    B. interest on the unpaid contributions
    C. an amount equal to the greater of –
        (i)     interest on the unpaid contributions, or
        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A).
    D. reasonable attorney's fees and costs of the action, to be paid by the defendant, and,
    E. such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26. (Statutory Rate of Interest in New York is 9%)

**Regarding Issue 1**, the employer states an employee can only be moved to family coverage by providing proof of immediate family. The employer contends that the Fund billed incorrectly and prior to obtaining documented proof. The employer subpoenaed the documents of seven (7) individuals, and the Fund provided documents on six people (F-6 [a-f]). The employer further states that even if documents are received late, the Fund office back bills. The employer claims that the Fund office does not supply proof of the change from single to family coverage; they just arbitrarily change the billing.

The Fund procedure, as testified to by Mr. Cunningham and Ms. Vegas, is that the employee contacts his office, supplies documented proof of the change, requests status be changed from single to family coverage, sends it to the Fund office. Mr. Cunningham testified documented proof of this change is then forwarded to the Fund office. Ms. Vegas testified the change is only made when proper documents are received in the Fund office. Ms. Vegas further testified that the Fund does back billing to the effective date. She testified that there have been mistakes made, and computer problems that required back billing, the back billing is accurate.

**Issue 2**, in referring to the "call", the employer's position is that there was no "call-up" contemplated during the period of October 1, 2003 and October 30, 20004. It is the employer's position that rates in effect at the expiration of the MOA (J-3) would be $359.00 for single coverage and $583.00 for family coverage. They further suggest that the rate quoted by the Fund of $384.00 for the single rate and $608.00 for the family rate constitutes a "roll-up". In the opinion of this Arbitrator a "call" and a "roll-up" are synonymous.

The Fund position, based on testimony and exhibits, states that based on the evidence presented by the Fund office, and no evidence to the contrary, it is clear that the Board of Trustees approved and implemented a $25.00 "call" in the second year of the MOA (J-3) and (F-4)

moving the contractual rate in Year 2 to $533, i.e. $508.00 + $25.000= $533.00. In Year 3 of the MOA (J-3), the Board of Trustees approved and implemented a second "call" raising the rate from $583.00 to $608.00 (F-5). i.e., a $25 call, plus the $50 contractual contribution increase, consistent with the Board of Trustees unanimous vote and consistent with Mr. Cunningham's testimony.

The employer called no witnesses to refute testimony or exhibits. In fact, the Fund Attorney called Mr. James Smith, Vice President of Finance of Supreme Oil, as a witness who, under direct testimony, stated he did read the "call" letter from the Fund office, but did not react due to the language in the content of the letter referencing Local 342 (F-2) and (F-3). It should be noted that these letters were sent to the employer under the letterhead of UFCW Local 174, Affiliated Trust Funds, indicating the Fund address and telephone number, and signed by the Fund Administrator. Mr. Smith also testified he was aware of MOA (J-3) call for contractual increases of $50.00 in each year of the contract, and referenced the asterisk (*) testifying it was a call in Year 2 and Year 3 of the MOA (J-3).

**Regarding Issue 3,** the employer states that a letter (J-1) to Mr. Ghelberg requesting a copy of the "call-up" letters sent to all employers, and a re-issue of the October billing and subsequent months, went unanswered. The employer referenced this letter as an "Offer of Proof" that the Fund did not respond. The employer could not substantiate as to Mr. Ghelberg ever receiving this letter. Further, the employer did not request, call or subpoena Mr. Ghelberg to testify.

The Fund position on Issue 3 is well documented in Exhibits (F-7) through (F-13). As previously stated, the employer knew full well that there were significant outstanding monies due to the Fund. On April 26, 2007 the Fund indicated that is was owed in excess of

$211,000.00. The employer was prepared to submit a check in the sum of $175,000.00 pending an audit. The Fund further contends that the employer willfully withheld contractual rates and continued to ignore billing in an on-going manner. As a matter of fact, the employer was still paying incorrect rates right up until the time of these proceedings.

**Issue 4,** pertaining to the payment of liquidated damages, interest, and attorney fees, it is the position of the employer that there should be no liquidated damages, interest or attorney fees charged.

The Fund attorney's position is that (ERISA) 502 (g)(2) clearly states that the Arbitrator must impose liquidated damages, interest, and reasonable attorney fees as dictated in (ERISA) section 502 (g)(2).

It is clear to this Arbitrator that the communication between the employer, Supreme Oil, and the Local 174 Affiliated Trust Fund personnel is adversarial. Better and more timely communication of documents pertaining to a change in coverage could be ascertained by requiring the employee to submit said documents to both the employer and the Union office in a timely fashion. It appears that the employer requires no documentation from their employees. The Employer's Human Resource Department should be more involved in correcting this issue going forward.

The communication issue clearly exists in the issue of billing. Both parties should make an effort to reconcile billing questions in a reasonable period of time. It is clear, however, that this employer, by refusing to pay contractual rates, regardless of call-up, willfully withheld monies owed to this Fund. It is clear that MOA (J-3) calls for a "call" in Year Two and in Year Three of the signed MOA (J-3). (F-4) and (F-5) clearly indicate that based on the advice of the Fund Actuaries, the Board of Trustees unanimously voted for a "call in Year Two and Year Three in addition to the $50 contractual increases.

Having said this, it is the opinion of this Arbitrator, based on testimony and exhibits, that the rate for single coverage as of September 30, 2005 is $384.00 and the rate for family coverage as of September 30, 2005 is $608.00.

Because the employer presented no evidence to refute the Fund documents (F-7) through (F-13), it can be determined that the employer owes the Funds $294,665.00 in delinquent payments. (E-3) marked in evidence by the employer only substantiates the Fund figures marked in evidence as (F-10).

Liquidated Damages at a rate of 20% and interest charged at 9% on the total delinquent payments shall be addressed as required by (ERISA) 502 (g)(2). In accordance with 502(g)(2)(D) Attorney fees are to be paid by the employer directly to Fund Counsel based on documented time submitted by the Fund Attorney on 6/7/07, which I find to be reasonable and in accordance with 502 (g)(2)(D) of ERISA..

## AWARD

**ISSUE 1** – The eligibility requirement based on (F-6 [a-f]) was met and all monies owed are to be remitted to the Fund.

**ISSUE 2** – The (HCF) properly assessed the employer a "call" in Year Two of the MOA (J-3), and Year Three of the MOA (J-3). (F-4) and (F-5) in conjunction with the advice of the Fund's independent Auditor, and the Actuary, implemented the call to maintain the reserve level as needed in providing employee benefits. Accordingly, the employer, Supreme Oil, shall pay these assessments to the Fund as required.

ISSUE 3 – All monies due the Fund as submitted in exhibits (F-7) through (F-12) and totaled in (F-13) amounting to $294,665.00 are to be paid to the Fund within 30 days of this award.

ISSUE 4 – The employer mandated by ERISA 502 (g)(2) is liable for Liquidated Damages of twenty percent (20%) of the contributions owed, Interest on the unpaid contributions charged at the Statutory Rate of Interest in New York State of 9%, plus attorney fees payable to Fund Attorney in the amount of $19,425 in accordance with the attachment to his June 7, 2007 letter.

Dated: June 13, 2007

_William F. Clarke_
WILLIAM F. CLARKE,
ARBITRATOR

**AFFIRMATION**

STATE OF DELAWARE

COUNTY OF SUSSEX

I, William F. Clarke, do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

Dated: June 13, 2007

_William F. Clarke_
WILLIAM F. CLARKE
ARBITRATOR

_Peggy W. Toomey_

**PEGGY W. TOOMEY**
NOTARY PUBLIC, STATE OF DELAWARE
MY COMMISSION EXPIRES JULY 9, 2007

20

**EXHIBIT B**

# MEMORANDUM AGREEMENT

This Agreement entered into this      th day of December, 2000 by and between SUPREME OIL COMPANY ("Employer") and U.F.C.W. LOCAL 174 ("Union").

The parties having met and negotiated have reached the following agreement:

## ARTICLE 5 - Wages

| | | |
|---|---|---|
| October 1, 2000 | - | $.40 |
| October 1, 2001 | - | $.20 |
| October 1, 2002 | - | $.23 |

*Hi-lo drivers will receive $.50 per hour instead of $3.00 per day rate.
*One operator of the Columbia machine and one operator of the 6-1 line will receive a $.25 per hour premium.

## ARTICLE 6- Shifts, Premium Pay and Additional Shifts

Add: *Each employee working a shift from 12 noon to 12 midnight shall receive an additional $.10 per hour as a shift differential.

## ARTICLE 12 - Layoff, Seniority and Recall

Section A. Amend paragraph A to provide for three (3) days faxed notice to Union rather than one (1) week written notice.

## ARTICLE 13 - Welfare Fund; ARTICLE 14 - Pension Fund

The Employer agrees to contribute to the Welfare Fund in the amounts set forth below. In the event that the Union determines that it will accept a contribution level equal to that agreed to in the Collective Bargaining Agreement negotiated with Ideal Plastic Containers Company, the Union shall notify the Employer, who shall increase its Pension Fund contribution by an amount equal to any decrease in the contribution level to the Welfare Fund set forth below:

Plan A

| | Composite | | Single |
|---|---|---|---|
| 1/1/01 | $510.00 | 1/1/01 | $235.00 |
| 7/1/01 | $550.00 | 7/1/01 | $255.00 |
| 7/1/02 | $595.00 | 7/1/02 | $275.00 |

## ARTICLE 20 - GRIEVANCES AND ARBITRATION

Section (E) Change 90 days to 30 days.

## NEW ARTICLE - Credit Union

Implement the Local Union Credit Plan. Deductions are to be made from employee's pay check by the Employer upon presentation of authorization. This credit union plan will be without charge to the Employer.

## ARTICLE 36 - Duration of Agreement

Term of Agreement - October 1, 2000 to September 30, 2003.

Items above marked with * shall not be retroactive, but shall start in the first pay period following ratification of this Memorandum Agreement.

In all other respects the contract and its terms shall remain unchanged. The Vacation Replacement Agreement dated April 2, 1997 shall be extended and attached to the new Collective Bargaining Agreement.

The within is subject to ratification by the membership before December 8, 2000.

Signed this _____ day of December, 2000.

SUPREME OIL COMPANY                    U. F.C.W. LOCAL 174

By_____             By_____

**EXHIBIT C**

ec 17 03 05:24p     UFC    LOCAL 1245           972 256 7437
12/16/2003   16:33    COLE•    2816538707 → 19732567437              NU.446   P.2

## FINAL OFFER

### ARTICLE 5 - Wages

| October 1, 2003 | - | $.40 |
|---|---|---|
| October 1, 2004 | - | $.20 |
| October 1, 2005 | - | $.25 |

*Full time hi-lo drivers will receive an additional $.25 per hour.
*One operator of the Columbia machine and one operator of the 6-1 line will receive an additional $.15 per hour premium.

### ARTICLE 6- Shifts, Premium Pay and Additional Shifts

Each employee working a shift from 12 noon to 12 midnight shall receive an additional $.10 per hour as a shift differential to a total of $.20.

### ARTICLE 13 - Welfare Fund

(A) The Employer agrees to contribute monthly, in the first week of each month, to both the UFCW Local 174 Commercial Healthcare Fund (Plan A) and to the Local 1245 Benefit Plan Administration the following sums per employee per month for all covered employees who have worked at any time during the month after six (6) months of employment

Family Plan
| Effective October 1, 2003 | $590.00 per month |
|---|---|
| Effective October 1, 2004 | $590.00 per month |
| Effective October 1, 2005 | $590.00 per month |

Single Plan
| Effective October 1, 2003 | $271.00 per month |
|---|---|
| Effective October 1, 2004 | $295.00 per month |
| Effective October 1, 2005 | $334.00 per month |

(B) Said contributions will be allocated between the two Funds as follows:

(a) UFCW Local 174 Commercial Health Care

Family Plan
| Effective October 1, 2003 | $458.00 per month |
|---|---|
| Effective October 1, 2004 | $508.00 per month* |
| Effective October 1, 2005 | $558.00 per month* |

f:\wp\supreme oil\supreme final offer 03

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

Single Coverage
Effective October 1, 2003          $271.00 per month
Effective October 1, 2004          $295.00 per month*
Effective October 1, 2005          $334.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

(b) Local 1245 Benefit Plan Administration

Family Plan
Effective October 1, 2003          $132.00 per month
Effective October 1, 2004          $ 82.00 per month*
Effective October 1, 2005          $ 32.00 per month*

*Rates may be decreased as a result of a call-up from the 174 plan.

(C) It is intended that the Employer continue its contribution into the UFCW Local 174 Commercial Health Care Fund and that the employees covered thereunder receive benefits from that Fund in accordance with the contribution rate, the UFCW Local 174 Commercial Health Care Fund (Plan A), and this Collective Bargaining Agreement.

(D) It is intended that additional contribution to the Local 1245 Benefit Plan Administration establish the Employer's rights and obligations as a contributing Employer to that Plan. The parties intend that Employer shall, on or before October 1, 2006, withdraw from coverage and contribution to the UFCW Local 174 Commercial Health Care Fund and contribute fully at the then effective contribution rate to the Local 1245 Benefit Plan Administration with its employees receiving coverages under the Local 1245 Benefit Plan Administration in accordance with that Plan and this Collective Bargaining Agreement. The contributions made by this Employer to the Local 1245 Benefit Plan Administration during the term of this Collective Bargaining Agreement shall be applied as a credit to the Employer's contribution rate at the time the Employer withdraws from the UFCW Local 174 Commercial Health Care Fund and effects coverage under the Local 1245 Benefit Plan Administration.

(E) In the event the Trustees of the Local 1245 Benefit Plan Administration do not permit this Employer to contribute towards coverage on behalf of its eligible employees, any funds paid under this paragraph to the Local 1245 Benefit Plan Administration shall be refunded to the Employer without interest at such time.

ARTICLE 21 - Shop Stewards

The Shop Steward shall receive one (1) paid day off per contract year to attend a Local

Empksupreme oilsupreme final offer 03

1245 Educational Seminar.

ARTICLE 35 - Effectiveness of Agreement

Delete

ARTICLE 36 - Duration of Agreement

Term of Agreement - October 1, 2003 to September 30, 2006.

Appendix A

Modify Agreement to reflect prior understanding that the Employer may employ vacation replacements during the vacation periods set forth in Article 9 (B).

New Clause

This Agreement shall be automatically extended until such time as the parties have concluded negotiations and ratification of a new Agreement for Ideal Plastic Containers Company.

*[handwritten: DELETE THIS LANGUAGE.]*

In all other respects the contract and its terms shall remain unchanged.

SUPREME OIL COMPANY                    U. F.C W. LOCAL 1245

By _____ as attorney        By _____

*[handwritten right margin:]*
APPENDIX A
THE UNDERSTANDING O...
THIS SENTENCE IS TO ...
THE VACATION PERIOD FROM
MAY 1 TO FEB 1 IF THE ...
DETERMINES THE VACATION ...
PLACEMENT CLAUSE IS LEGIT...

**EXHIBIT D**

MINUTES
OF
UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND

Minutes of the meeting of the Board of Trustees of the UFCW
Local 174 Commercial Health Care Fund held at 540 West 48th
Street, New York City, on November 17, 2004.

PRESENT:

UNION TRUSTEES                    EMPLOYER TRUSTEES
Michael Mareno                    John Calcagno
John Troccoli                     Robert Burke, Sr.
Richard Abondolo                  Boyd Adelman
Fred Steiniger                    Van Ayvazian
Donald Proniewych                 Steven Leibowitz

ALSO PRESENT:

Howard Shulman, David Lee & Joseph Reinhart of Berdon, LLP, Fund
     Accountants
Maria Maloney, Esq. & John Maloney of Maloney Associates, Inc.,
     Third Party Administrator
Lisa Rossi, Fund Administrator
Martin L. Milner, Esq. of Simon & Milner, Fund Counsel
Andrew Calcagno, Esq. of Calcagno & Associates, Collection
     Counsel
Jeffrey Endick, Esq. of Slevin & Hart, P.C., Special Counsel
Lisa O'Leary, Executive Vice President and Director of
     Organization
Ira Wincott, Esq. Union Counsel


I.   Call to Order and Minutes

The meeting was called to order and Mr. Abondolo,

Chairperson, noted the presence of a quorum. The Trustees

reviewed the minutes of the previous meeting.  After a period of

discussion concerning the minutes, on a motion duly made and

1

The reports for the fiscal year ended 2002 and 2003 were also made available to the Trustees.

That report indicated available assets of 8,986,268 as of 12/31/03.

It was noted that pursuant to the language in a number of Collective Bargaining Agreements, an additional $50 per month increase is to commence 04/05.

The Contract also permits a call for an additional contribution commencing on 01/01/05 for the retail contract, on 05/01/05 for the wholesale contract, and on 06/01/05 for the general industry contract once there are 3 months reserves. The call would be made effective 01/01/05 for retail, 05/01/05 for wholesale and 06/01/05 for general industry.

Based on the financial reports, the Trustees agreed that such a call should be made of the contributing employers.

Upon a motion duly made and seconded it was unanimously Resolved by the Trustees that effective 01/01/05 the call is to be made for an additional $25 per month call from each of the contributing employers subject to such a call.

After conclusion of the above, the financial report was unanimously approved.

8

**EXHIBIT E**

# STARR, GERN, DAVISON & RUBIN

A PROFESSIONAL CORPORATION

## COUNSELLORS AT LAW

103 EISENHOWER PARKWAY
ROSELAND, NEW JERSEY 07068-1050
TEL (973) 403-9200
FAX (973) 226-0031
WWW.STARRGERN.COM

EDWIN S. RUBIN
RONALD L. DAVISON
AMOS GERN*†
IRA M. STARR*
JONATHAN J. LERNER*^
HARLAN L. COHEN*
NICHOLAS STEVENS*^
JEFFREY A. RIZIKA
STEPHEN R. URBINATO°
ALLAN R. MORDKOFF>
JOHN J. RATKOWITZ
KRISTEN R. HESS*
KELLIANNE E. GREENWOOD*>
CONSTANTINE V. SOUPIOS
WILLIAM FIGUNDIO III*

COUNSEL TO THE FIRM
LARRY M. COLE

OF COUNSEL
DOMENIC D. TOTO*
JAY M. SILBERNER*^
EVAN L. GOLDMAN

*  MEMBER NY & NJ BAR
*  MEMBER NJ & DC BAR
>  MEMBER NJ & CT BAR
°  MEMBER NJ & PA BAR
†  CERTIFIED BY THE
   SUPREME COURT OF
   NEW JERSEY AS A
   CIVIL TRIAL ATTORNEY
^  N.J.C.R. 1:40
   QUALIFIED MEDIATOR

October 31, 2005

Mr. Marvin Ghelberg
UFCW Local 174
Affiliated Trust Funds
540 West 48th Street
New York, New York 10036

Re: Supreme Oil Co.

Dear Mr. Ghelberg:

As you know, the undersigned represents Supreme Oil Co. Your health insurance invoice for September and October has been received. The October invoice seeks $384.00 for single coverage and $608.00 for family coverage. Please be advised that the Collective Bargaining Agreement negotiated with Local 1245 caps contribution for the year commencing on October 1, 2005 at $558.00 per month for family coverage and $334.00 per month for single coverage, with an indication that these may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers. Assuming that there has been a call-up to all contributing Employers, the maximum contribution for family coverage would be $583.00. The maximum contribution for single coverage would be $359.00.

I would request that you immediately do the following:

1. Forward a letter to me indicating whether or not there has been a call-up to all Employers and raised $25.00 per month;

2. Re-issue your bill for October and subsequent months based upon the Collective Bargaining Agreement contribution rate.

Very truly yours,

STARR, GERN, DAVISON & RUBIN

By
Larry M. Cole

LMC:kp